UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


NORMA LEE ADAMS and
BARRY WAYNE ADAMS,

        Plaintiffs,

v.                                          Case No. 4:05-cv-62

CITY OF MARSHALL, MARSHALL CITY       Hon. Wendell A. Miles
POLICE, MICHAEL OLSON, MAURICE
EVANS, BRUCE ELZINGA, ANDREW
GROENEVELD, LEE FRIEND, TOM KING,
GAIL M. BUDROW-BRADSTREET, STEVEN
QUIGLEY, VINCE TRUDELL, and JOHN DOE(S)
and JANE DOE(S),

        Defendants.
_____/


OPINION AND ORDER

      This matter is before the court on Defendants' Motion for Summary Judgment (docket #81). Defendants' motion addresses only Plaintiffs' Fourteenth Amendment due process claim, but is silent as to their Fourth Amendment claim.[1] Plaintiffs have responded (docket #88). For the reasons discussed below, the court grants the motion as to Defendants Lee Friend and Maurice Evans, and denies the motion in all other respects.

Background

      Plaintiffs, Barry Wayne Adams (Mr. Adams) and Norma Lee Adams (Ms. Adams),

---

[1] On December 12, 2005, the court granted Defendants' previous motion for summary judgment with regard to claims under the Ninth and Tenth Amendments, but concluded that the facts were not sufficiently developed to grant summary judgment on Plaintiffs' due process and Fourth Amendment claims. (Docket #49).

allegedly maintained the backyard of property known as 622 West Green Street, Marshall, Michigan as a "natural garden and microhabitat for native wildlife." (Compl. ¶¶ 1, 4). On May 10, 2004, Plaintiffs received an Ordinance Violation Notice. The notice stated that "622 W. Green St. is found to be in violation of the city ordinance for noxious vegitation [sic]/weeds. Please take care of the problem within 7 days or the city will have the property abated at the owners expense." The form notice showed that the violation was "Noxious Weeds" and "Ordinance No. 17-38." However, ordinance number 17-38 had been repealed, and, even when in effect, did not concern noxious weeds. Defendants characterize this as a "typo." The notice did not state that Plaintiffs were entitled to a hearing before the weeds were abated, but did state that, "[i]f you have any questions regarding this notice, please contact the Officer named below," which was Officer "PTL A. Groeneveld, Badge No. 215." (Docket #83, ex. 6). The telephone number of the Marshall City Police was printed on the notice.

Plaintiffs did not contact Officer Groeneveld. Instead, on May 11, 2004, Plaintiffs returned the Ordinance Violation Notice and a "Constructive Notice of Refusal" to the Marshall City Police Department. On the notice, Plaintiffs wrote "Refused for Cause with Dishonor." (Docket #83, ex. 1). Plaintiffs' "Constructive Notice of Refusal" stated in part: "I, Natural Person Barry Wayne Adams, have inadvertently received an attempt of recent presentment, enclosed herein. Notice is hereby given that said presentment is refused for cause with dishonor and returned, in the manner of MCL 440.3501, MCL 440.350, and MCL 440.3601." (Id..)

Defendant Gail Budrow-Bradstreet is the Clerk/Treasurer and head of the City of Marshall Municipal Ordinance Violations Bureau. According to her sworn affidavit, had Plaintiffs contacted Defendant Officer Groeneveld, he would have met with them and they could

have presented their arguments and evidence as to why 622 Green Street did not violate the noxious weed ordinance. If the situation was not resolved, Officer Groeneveld would have referred Plaintiffs to a meeting with the Deputy Chief of Police or the Director of Public Safety where Plaintiffs could again present their arguments and evidence as to why 622 Green Street did not violate the noxious weed ordinance. If the situation was not resolved at this step, Ms. Budrow-Bradstreet would have either (1) issued a civil infraction ticket and scheduled a hearing before the Municipal Ordinance Violations Bureau, or (2) issued a State of Michigan Uniform Law Citation and scheduled a hearing in the Calhoun County District Court. (Affidavit of Gail Budrow-Bradstreet, docket #83, ex. 8).

On June 16, 2004, a lawn service, accompanied by two Marshall City Police officers, began cutting and removing plants located in the backyard of 622 Green Street despite Mr. Adams' protests. The work was completed on June 17, 2004. On July 13, 2004, the City of Marshall sent an invoice to Plaintiffs in the amount of $2,355.95 representing the cost of service pertaining to the "noxious weeds."

## Standard of Review

Summary judgment is proper only where there exists no genuine issue of material fact and one party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1996). The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden

of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party opposing the motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248. An issue is genuine if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. Id.; Braithwaite v. The Tinken Co., 258 F. 3d 488, 493 (6th Cir. 2001) ("If after reviewing the record as a whole a rational factfinder could not find for the nonmoving party, summary judgment is appropriate.").

Discussion

Defendants contend they are entitled to summary judgment because (1) with respect to Mr. Adams, he lacks standing to bring this lawsuit, (2) Plaintiffs received notice and an opportunity for a hearing was available, (3) the City of Marshall cannot be held liable, and (4) the individual defendants are entitled to qualified immunity.

**Standing**

Defendants contend that Mr. Adams lacks standing to bring this suit. Legal title to 622 Green Street is vested with the Robert L. and Norma Adams Family Trust. (Docket #83, exs. 2 and 3). Mr. Adams, who is Robert L. and Norma Adams' son, resides on the property (docket #83, ex. 4), either under the terms of the trust or with the permission of Ms. Adams, the Trustee.[2] Because neither party has submitted the terms of the trust, Mr. Adams' interest in the house is not entirely clear.

Under Michigan law, "[a] vested interest is one that is capable of becoming possessory

---

[2]Robert L. Adams is deceased., and apparently his death occurred before Plaintiffs received the Ordinance Violation Notice.

4

immediately upon the expiration of the preceding estate." In re Childress Trust, 486 NW2d 141, 143 (Mich. Ct. App.1992), citing Stevens Mineral Co v. Michigan, 418 NW2d 130, 133 (Mich. Ct. App.1987).  If the family trust is now irrevocable and the terms provide that the trust terminates at Ms. Adams' death and the property is to be conveyed to Mr. Adams, he clearly has a present vested interest.  However, without evidence of the terms of the trust agreement, the Court cannot make that determination.  Nonetheless, it is undisputed that at all relevant times Mr. Adams had a possessory interest in the property.

"The Fourteenth Amendment's protection of 'property,' however, has never been interpreted to safeguard only the rights of undisputed ownership. Rather, it has been read broadly to extend protection to 'any significant property interest.'" Fuentes v. Shevin, 407 U.S. 67, 86 (1972), quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971); see also Board of Regents v. Roth, 408 U.S. 564, 571-72 (1972) (explaining that "the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money."); Hamby v. Neel, 368 F.3d 549, 560 (6th Cir. 2004), citing Thomas v. Cohen, 304 F.3d 563, 576 (6th Cir. 2002) (stating that a possessory interest in property invokes the right to procedural due process before being deprived of that interest).  The Court concludes that Mr. Adams had a sufficient interest in the property to invoke the right to procedural due process before being deprived of that property.

Defendants next argue that under Michigan law, "'the beneficiary of a trust may not maintain an action at law against third persons where a trustee is entitled to do so,'" quoting Apollinari v. Johnson, 104 Mich. App. 673 (1981).   Had Plaintiffs brought an action in state court claiming violations of state law or the Michigan constitution, Apollinari might control.  It

is not applicable where Plaintiffs are claiming a violation of their rights under the federal constitution. A party has standing to assert a federal constitutional claim if he has suffered "an injury in fact-an invasion of a legally protected interest;" there is a causal connection between the injury and the defendant's conduct; and it is likely that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Plaintiffs' allegations demonstrate Mr. Adams' standing under Lujan.

**Due process**

Defendants contend that Plaintiffs received all the process they were due as they received adequate notice, and failed to take advantage of the opportunities to be heard that were available. Plaintiffs counter that they never received proper notice because (1) the notice did not comport with state law, and (2) it contained no allegations, but instead represented that the property had already been found in violation of the noxious weed ordinance; and further, that they were not provided with a meaningful opportunity to be heard. Plaintiffs contend that the "*de minimis* affidavits" submitted by the Defendants "will be impeachable upon cross-examination at trial."

The regulation and abatement of nuisances is generally a proper exercise of a city's police power. It is entirely reasonable for a city to prescribe minimum property maintenance standards for purposes of health and safety and to maintain adjacent land values, as long as the identification of nuisances is based upon non-arbitrary standards. Goldblatt v. Town of Hempstead, 369 U.S. 590, 594-95 (1962). It is also reasonable that nuisance abatement be one of the enforcement mechanisms available to a municipality. Thus, the abatement of a nuisance is permissible if the property owner is first provided due process. See, e.g., Samuels v.

Meriwether, 94 F.3d 1163, 1166-67 (8th Cir. 1996) (upholding legality of destroying building when owners failed to abate nuisance); Conner v. City of Santa Ana, 897 F.2d 1487 (9th Cir.1990) (finding no due process violation where plaintiffs claimed their vehicles had been seized by the city without judicial intervention); Hagen v. Traill County, 708 F.2d 347, 348 (8th Cir.1983) (upholding legality of destroying a building for failure to abate nuisance after notice and hearing).

Generally, the process that is due before a property deprivation occurs consists of prior notice and an opportunity for a predeprivation hearing to present reasons why the proposed action should not be taken. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985); Liberte Capital Group, LLC v. Capwill, 421 F.3d 377, 383 (6th Cir. 2005) (citations omitted). Even if the deprivation of property is temporary, the party being deprived is entitled to due process. Fuentes v. Shevin, 407 U.S. 67, 85-86 (1972). "While the length and consequent severity of a deprivation may be another factor to weigh in determining the appropriate form of hearing, it is not decisive of the basic right to a prior hearing of some kind." Id. at 86. Moreover, the right to be heard does not depend upon an advance showing that one will surely prevail at the hearing. "'To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merit.'" Id. at 87, citing Coe v. Armour Fertilizer Works, 237 U.S. 413, 424 (1915); and see Harris v. City of Akron, 20 F.3d 1396, 1401 (6th Cir. 1994) (explaining that the Fourteenth Amendment does not prohibit every property deprivation by the state; only those deprivations affected without due process are actionable). Although the parties vigorously dispute whether the vegetation in Plaintiffs' yard

7

constituted noxious weeds, the answer to that question is not dispositive. If satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury. Hudson, 468 U.S. at 533; Jefferson v. Jefferson County Public School System, 360 F.3d 583, 587-88 (6th Cir. 2004). Due process requires that Plaintiffs be given notice and an opportunity for a hearing; it does not guarantee that the right outcome be reached. Brock v. Roadway Express, 481 U.S. 252, 261 (1987).

Turning first to Plaintiffs' arguments, they simply have no merit. They claim that the notice did not comport with state law, but the state law cited by Plaintiffs, MICH. COM. LAWS §§ 440.3501 and 440.3601, are provisions of Michigan's Uniform Commercial Code governing negotiable instruments and are not applicable to this situation. They also argue that the notice contained no allegations, but instead represented that the property had already been found in violation of the noxious weed ordinance. The government may not deprive a person of his property without due process. The initial determination that the yard at 622 Green Street violated the noxious weed ordinance did not deprive Plaintiffs of their property. Rather, it was the subsequent abatement that caused the deprivation, and which triggered Plaintiffs' right to a hearing prior to the abatement. See, e.g., Brody v. Village of Port Chester, 434 F.3d 121 (2d Cir. 2005) (holding that the plaintiff had no right to participate in the village's initial decision to exercise its power of eminent domain).

A primary purpose of the notice required by the Due Process Clause is to ensure that the opportunity for a hearing is meaningful. City of West Covina v. Perkins, 525 U.S. 234, 240 (1999), citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) ("Th[e] right to be heard has little reality or worth unless one is informed that the matter [affecting one's

property rights] is pending and can choose for himself whether to appear or default, acquiesce or contest"). The Ordinance Violation Notice in this case clearly informed Plaintiffs of the nature of the alleged violation, and that abatement would follow if Plaintiffs did not rectify the situation. Plaintiffs understood the contents of the notice.[3] (See generally, Barry Wayne Adams deposition, docket #83, ex. 7). The notice adequately apprised Plaintiffs of the alleged problem and of the threat of abatement, at their expense, if the problem was not corrected.

Defendant Budrow-Bradstreet set forth the procedures that would have been followed had Plaintiffs telephoned Defendant Groeneveld. Plaintiffs' assertion that Budrow-Bradstreet's statements "will be impeachable upon cross-examination at trial" (Pls.' Response at ¶ 12, docket #88), does not satisfy their burden of setting forth specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 248. Accordingly, Plaintiffs failed to create a genuine issue of fact as to whether constitutionally sufficient opportunities to be heard were available.

"A party cannot create a due process claim by ignoring established procedures. 'The availability of recourse to a constitutionally sufficient administrative procedure satisfies due process requirements if the complainant merely declines or fails to take advantage of the administrative procedure.'" Santana v. City of Tulsa, 359 F.3d 1241, 1244 (10th Cir. 2004) (citing Dusanek v. Hannon, 677 F.2d 538, 542-43 (7th Cir. 1982)). If Plaintiffs simply declined, for whatever reason, to take advantage of the procedures outlined by Defendant Budrow-Bradstreet, they could not claim that their due process rights were violated. However, in Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1 (1978), the Supreme Court held that

---

[3] Plaintiffs do not argue that they were actually confused by the erroneous reference to the repealed ordinance.

a notice of possible termination of utility service for non-payment that included a telephone number in an enclosed flyer did not adequately apprise the recipients that they had a right to a hearing.  The Court held that, before terminating utility service for nonpayment, a public utility must make available to its customers the opportunity to discuss a billing dispute with a utility employee who has authority to resolve the matter, id. at 16-17, and that due process required the utility to inform the customer not only of the planned termination, but also of the availability and general contours of the internal administrative procedure for resolving the accounting dispute.  Id. at 13-15.  The Court noted that "there is no indication in the record that a written account of [the utility's dispute resolution] procedure was accessible to customers who had complaints about their bills. [The plaintiff's] case reveals that the opportunity to invoke that procedure, if it existed at all, depended on the vagaries of 'word of mouth referral.'" Id. at 14, n.14.  Subsequently, in City of West Covina v. Perkins, 525 U.S. 234 (1999), the Supreme Court clarified that Memphis Light does not stand for a general proposition that notice of remedies and procedures is required in all circumstances.  Id. at 242.  When the remedies and procedures invoking those remedies are provided by "published, generally available state statutes" and published "documents available to the public," id. at 241, the city "need not take other steps to inform" the property owner of his options.  Id..

A property owner that is in violation of the City of Marshall's noxious weed ordinance is initially given the opportunity to present his or her defenses to the officer identified on the notice of violation, and then to the deputy chief of police or the director of public safety.  Only if this procedure of informal dispute resolution is futile does Defendant Budrow-Bradstreet issue a civil infraction ticket or a State of Michigan Uniform Law Citation.  However, there is no language on

the notice itself advising the recipient of the right to appeal the decision that their property is in violation of the weed ordinance, or of their right to a hearing with the issuing officer, deputy chief of police, or public safety director. Moreover, it appears that the only avenue available to the property owner for triggering the informal hearings is a telephone call to the officer whose name appears on the notice. Plaintiffs did respond to the notice by way of a letter. Although the letter was verbose, somewhat difficult to decipher, and raised irrelevant points it was obvious that Plaintiffs were challenging the determination that 622 Green Street was in violation of the City ordinance. Apparently the letter was not sufficient to trigger the hearing process as no meeting with Defendant Groeneveld was scheduled. The Court also notes that the City of Marshall's Noxious Weeds Ordinance, § 92.25 through § 92.99, as published in the Marshall Chronicle on March 13, 2006, does not mention that a party has the right to contest a noxious weed determination, or that an opportunity for a hearing is available. (See Plaintiffs' Motion for Injunction, Attach. B, docket #69). Neither Defendants nor Plaintiffs have submitted evidence on the issue of whether the available hearings, and procedures for invoking those hearings, were set forth in published, publicly available documents. Accordingly, Defendants have not established that they are entitled to summary judgment on Plaintiffs' due process claim.

**City of Marshall**

Defendants contend that the City of Marshall cannot be held vicariously liable where Plaintiffs have failed to identify a policy or custom of violating constitutional rights. Defendants are correct that a municipality cannot be held liable under § 1983 on the theory of respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) (Section 1983 liability only attaches where an injury is inflicted by a deliberate choice to follow a course of action made by

"lawmakers or by those whose edicts or acts may be fairly said to represent official policy"); Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986) (reiterating that a municipality is liable only for its own acts-acts that it "has officially sanctioned or ordered"). A municipality is only liable when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. at 694. There must be an "affirmative link between the policy and the particular constitutional violation alleged" for a municipality to be held responsible. Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985); accord Alkire v. Irving, 330 F.3d 802, 815 (6th Cir. 2003). A "policy" includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the municipality. Monell, 436 U.S. at 690. A custom "must reflect a course of action deliberately chosen from among various alternatives. In short, a 'custom' is a 'legal institution' not memorialized by written law." Doe v. Claiborne County, 103 F.3d 495, 507 (6th Cir. 1996). There is no evidence on the issue of whether Defendants' course of action emanated from a policy or custom that originated from "official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur, 475 U.S. at 483. A genuine issue of a material fact exists which precludes summary judgment in favor of the City of Marshall.

**Qualified Immunity**

Under the doctrine of qualified immunity, "government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Saucier v. Katz, 533 U.S. 194, 201-02 (2001); Harlow v. Fitzgerald, 457

U.S. 800, 818 (1982). The qualified immunity analysis requires the court to determine (1) if based upon applicable law, a constitutional violation has occurred; (2) whether the state of law at the time of the actions alleged gave the Defendants fair warning that their conduct was unconstitutional; and (3) whether the evidence indicates that what the defendants allegedly did was objectively unreasonable in light of the clearly established law. See Hope v. Pelzer, 536 U.S. 730, 741 (2002); Feathers v. Aey, 319 F.3d 843, 848 (6th Cir. 2003). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 493 U.S. 635, 640 (1987).

Qualified immunity is evaluated under a purely objective standard, and the official's subjective belief is not considered. Harlow, 457 U.S. at 819; Sandul v. Larion, 119 F.3d 1250, 1254 (6th Cir. 1997). It was well established in 2004 that due process prior to a property deprivation required, at the least, notice and an opportunity to be heard, see Arnett v. Kennedy, 416 U.S. 134,180 (1974) (observing that "[t]he opportunity to defend one's property before it is finally taken is so basic that it hardly bears repeating."), and that property owners must have notice of the opportunity for a hearing and the procedure for taking advantage of the opportunity, either by language on the notice itself or by published statutes or other publicly available documents. Accordingly, if it is ultimately found that Plaintiffs' constitutional due process rights were violated, Defendants would not be entitled to qualified immunity.

**Defendants Lee Friend and Maurice Evans**

A claimed constitutional violation must be based upon active unconstitutional behavior. Greene v. Barber, 310 F.3d 889, 899 (6th Cir. 2002). According to Defendant Friend's sworn affidavit, he is a police officer and neighbor of 622 Green Street, but has had no contact with Plaintiffs in his capacity as a police officer. He was not involved in issuing the ordinance violation notice to Plaintiffs or cutting the vegetation at 622 Green Street. (Docket #83, ex. 21). Plaintiffs have presented no evidence refuting Defendant Friend's averments. Because Defendant Friend was not involved in the alleged unconstitutional conduct resulting in Plaintiffs' injuries, he is entitled to summary judgment.

During the relevant time period, Defendant Evans was the City Manager of Marshall. According to his sworn affidavit his contact with Plaintiffs was limited to receiving communications which he referred to the appropriate department head and/or city legal counsel. (Docket #83, ex. 14). Plaintiffs do not state any facts in their complaint implicating Defendant Evans in the unconstitutional conduct they are alleging, nor have they offered any evidence refuting Defendant Evans' averments. Section 1983, individual capacity suits against supervisors cannot be premised on a theory of respondeat superior or vicarious liability. McQueen v. Beecher Cmty. Sch., 433 F.3d 460, 470 (6th Cir. 2006); Leach v. Shelby County Sheriff, 891 F.2d 1241, 1246 (1989). Because Defendant Evans was not personally involved in the wrong doings alleged by Plaintiffs, he is also entitled to summary judgment.

## Conclusion

For the reasons discussed above, the court GRANTS the Defendants' Motion for Summary Judgment (docket #81) as to Defendants Lee Friend and Maurice Evans, and DENIES the motion as to all other Defendants.

So ordered this 27th day of December, 2006.

                                                  /s/ Wendell A. Miles
                                                  Wendell A. Miles
                                                  Senior U.S. District Judge